in his individual capacity. Argument is not to exceed 15 minutes per side. Ms. Mara for the appellate. Good morning. May it please the court. Mary Mara, Assistant Corporation Counsel in Oakland County. I'm appearing on behalf of Oakland County Sheriff Deputy Scott Panin for purposes of today's appeal. This appeal raises two issues. One, whether or not Deputy Panin is entitled to qualified immunity. And second, whether or not plaintiff's should be barred by the doctrine set forth in Heck v. Humphrey. I know that the court is well versed in the facts, so I'm not going to repeat them. I just want to stress what I think is a critical factor in this court's analysis for both issues. And that is the fact that the resisting and obstructing offense began when Deputy Panin exited his vehicle and asked plaintiff to provide us some identification and attempted to pat him down. And it did not stop. It was one continuous transaction until the very moment that Deputy Panin was able to subdue Mr. Flanigan. So it stops when he's subdued, right? Yes. And the district court found that the tasing in the mace, no problem. Correct. Right? Yes. But what the factual point? He was hit 15 to 20 times in the head. Correct? No. I would have to disagree with that, Your Honor. The testimony was clear, and I think the district court conceded that, okay, taking the foot chase and the continuum of events... The court says everything's totally fine until he gets hit 10 times in the head. Correct. But you're going to say he was still trying to get up. He was still trying to get up. And just prior to that... He said that himself. He did say that. He did. Flanigan said that, and he also admitted that Deputy Panin, throughout this entire struggle, which is now on the ground, was repeatedly ordering him to stop resisting. I guess here's the question I have for you. As I understand the testimony, Deputy Panin also said that the head strikes were unnecessary at that very point to subdue Flanigan. Is that accurate? I mean, is that an accurate understanding of the testimony? No. I'm sorry, Your Honor. I don't recall him making any type of a concession. Isn't that what the district court thought the testimony said? The district court concluded that a reasonable officer would not think that 10 to 15 blows to the head were necessary. No. She said that... I mean, as I recall it, she said that part of the basis for her decision was that, in her view at least, Deputy Panin himself testified that the strikes at that very point were not necessary to subdue... Do you have her opinion? I do, yes. Page 17, she says, but Panin offered no such testimony here. Indeed, he testified that given the circumstances and scenario, I didn't have to punch Flanigan to subdue him. Correct. Okay. Yes. Correct. Yes. He said that would have been unnecessary. Yes. He denies that he struck him, but he concedes for purposes of this appeal that those strikes were delivered. But if he himself is saying they're unnecessary, then why isn't... And so then it seems to me, and tell me where I'm wrong, okay? It seems to me there's a pure factual dispute over which we don't have jurisdiction, which is the plaintiff's saying, he punched me 15 to 20 times. Correct. The officer's saying, I didn't punch him, and I didn't need to punch him. Right? Correct. So if he punched him and he didn't need to punch him, then it seems to me he's not... Why isn't that excessive force? You have to accept the plaintiff's allegation is true. You do. About the punching. About the punching, yes. To that point, because that's really all that's at issue in this ball. But to go specifically to your point, Your Honor, I think that that testimony has to be viewed in context. Because Deputy Payne testified that he did not deliver strikes because he didn't believe such strikes were necessary, and he was able to subdue him without administering any strikes. Okay, go ahead. I'm sorry. But he didn't say that it would be necessary. You have to look at his testimony in context. The fact that he says, I didn't need to. Right. Okay, that's a different question than whether, if we accept plaintiff's version of the facts is true, that he administered those strikes, which we have conceded for purposes of this appeal. We agree that he was struck 10 to 15 times in the head. But we would submit that that's not excessive because Mr. Payne continued to resist until the very moment he was placed in handcuffs. I thought it was undisputed he was subdued. No. He alleged in his complaint that there was post-arrest violence, but then testimony at his deposition, it was clear in the part there is absolutely no question of fact that there was no post-arrest violence. Wait. The District Court says, on the other hand, taking the testimony in the light most favorable to Flanagan, he was already on the ground when Payne allegedly started hitting him in the head. Right. But he also, and the court also acknowledged, and it's also consistent with the record, that even though he was on the ground, he also testified that, and it's uncontested, that Mr. Flanagan reached for his gun while they were on the ground. Your point, though, on this, I mean, we can narrow this down to about a 10-second interval, right? Correct. Your point is he's still trying to get off the, this is at the end of this long period of spirited resistance and non-compliance, and during this 10-second interval, then, he is trying to get off the ground still until finally he's hit 10 or 15 times. I mean, that's your argument. Accepting Payne's version, which we are totally willing to do, we need to do for purposes of this appeal, we'll accept that that's true. Can you show me where, and you may be right, just to educate me, where does it say in the district court's opinion or in the facts that Plaintiff concedes he was trying to get up off the ground when he punched him? I'm going to go to my statement of facts because... Or where, you know, or you could just go right to Flanagan's step. Yeah. Right, okay. Wherever you can find it. I think I can find it best in my statement of facts because that is, that's the critical point in this case. I apologize, I should have this at my disposal. Payne concedes... Wait, no. ED258. 258, 259, 256, 257, 258, and also 359. Payne did not... Flanagan and Payne agree on one critical fact. They agree that Payne did not hit Taye's mace or use any force whatsoever once he was secured in handcuffs. Wait, where are you? I'm looking at page ID 259. That's where there's the concession and 359. That's where you'll find the concession by Mr. Flanagan that there was absolutely no post-arrest violence used on him once he was secured in handcuffs. So, let's assume that Mr. Flanagan testified he's still trying to get up during this period. Yes. What do we do with what seems to be the officer's testimony himself, his own belief? I know that it wasn't necessary at that point. Right. I think what you said before was he was not inculpating himself because he said, I didn't punch the guy to begin with. Correct. But we have to assume he was punching the guy and yet the officer, we still have testimony of him saying at that point in this situation it wasn't necessary. Right. So, I mean, he kind of got the worst of both worlds the way this comes to us in a Qualified Immunity Appeal and what do we do with that? Well, I just, I really think that you have to, if you focus in on that response to that question in that context, of course I have a problem. But you have to look. Can I ask you something about that? Yes. Because maybe you're conceding too quick and maybe I don't understand it and so maybe you and your opponent can clear it up for me. Yes. So, she says, go back to her statement on page 17. Yes. She has two sets of quotes, okay? She says, given the circumstances and scenario, I didn't have to punch Flanagan to subdue him. I want you to notice where the quotes end and then she says, and then when I go to the deposition, here's what the deposition reads and I don't have the next line so maybe you can tell me. Ever hit him in the face or head? No, sir. Any reason to do that? No, sir. To do that would be excess, wouldn't it? After he was handcuffed? Before. Given the circumstances and the scenario, I didn't have to. But he never says, punch him in the head. And so, I'm not sure why is that, why are you conceding that's a concession? And I really want to ask your opponent that. Okay. Is the district court misquoting or is there something I'm missing? Because she says, punch Flanagan to subdue him, but I don't see that in here. Where did he say, punch Flanagan to subdue him? I'm sorry, I'm sorry, your honor. I don't understand the question. I'm reading her quote. You see her quote? And her quote ends twice. Right. And given the circumstances and scenario, I didn't have to. That is in the question, if you look at the Q&A, that's all he says. He doesn't say, punch Flanagan to subdue him. I'm wondering where that language comes from. Because she has then another quote. Right. She only uses, he didn't have to punch him to subdue him. When you look at this officer's testimony in its totality, it is clear that he denies that he hit him, but says that he didn't have to resort to that type of force. He managed to do it just with the physical struggle on the ground. But the mere fact that he says, I didn't have to resort to that, doesn't mean automatically that, okay, if you had, it would have been excessive. The whole point, the danger I think in this whole path that we may be traveling on, is that who can say as we sit here in the tranquility of these chambers, whether one's, is conceding his statements are true? Taking into account everything that happened leading up to that, who can say how many strikes were necessary? One, two, three, four, five? Right. It's an objective test. It's an objective test. If he testifies against his own interests, it's not necessarily dispositive of what a reasonable officer would know or not know to do. Right. We'll see what Mr. Cabot has to say about that. Okay. It's not helpful for you, but it's not dispositive necessarily. Tell me about Heck against Humphrey. Thank you. I would love to. On Heck versus Humphrey, this is where I go back to what I said at the very beginning. For purposes of analysis on both of these issues, you really have to keep in mind the fact that this is one continuous sequence of events. The resisting and obstructing offense took place over a period of however many minutes this chase and struggle covered. He went to court and pled guilty to that offense of resisting and obstructing, but now he wants to come back and sue and argue that it was excessive force. Go ahead. It blocks any kind of a civil case here, no matter whether your client beat him 15 or 20 times or 50 times. He could have raised that as a defense in the trial court. Now, Michigan law, I concede, Michigan law is not as clear as other states that excessive force is a defense to the crime of resisting and obstructing. They do say, the state of Michigan does make it clear that the resisting and obstructing, the arrest itself has to be lawful. Why isn't Schreiber controlling here? Schreiber says if they can be consistent, then it's no problem. Here, there's an argument that they can be consistent, which is that if he was done resisting at the time and was subdued, then everything post that has nothing to do with the resisting and running and disobeying a command. Correct. Yes, but under the facts of this case, it all really depends on when you determine that the struggle ended. Nobody disputes that the struggle, Mr. Flanagan struggled until the point he was put in handcuffs. Well, he says conflicting things. The point you cite, in the pages before that, he said, after being tased and pepper sprayed, he gave up. I agree with you, he's testifying to both things. We've got to figure out what to do with that, but he did say also he gave up. Right, but at what point? He said, when I'm on the ground, I gave up. Right, but this is this 2020 vision where we look back and we don't ... The danger in just focusing in on this tiny little segment of time is that you have to take the entire situation into effect. What would a reasonable officer do? Given everything that preceded that? I do agree if he gave up, he's on the ground, he's laying there, and you punch him 15 to 20 times. No matter what he did before that, even if he shot at you before that, if he's on the ground laying there doing nothing, the officer can't punch him 15 to 20 times. If that's true, that he was doing nothing, I would agree with you, but that's not what the record demonstrates. Mr. Flanagan admitted that he continued to resist until the very moment that he was placed in handcuffs. That is beyond debate. It's uncontested. I think we'll have to do the rest of the discussion in your rebuttal. Thank you very much. We'll hear from Mr. Cavett. Good morning, Your Honor. Sean Cavett on behalf of the appellee, Mr. Flanagan. I want to start with, there's been a lot of discussion about the qualified immunity analysis. I raised it in my briefing, and I would suggest that, as I did in my briefing, that the defendant actually waived this in their initial motion, only after some supplemental briefing. You might want to cut to what we seem to be... So there's some question about what he's doing at the time of the 15 to 20 strikes. So I have some quotes from Mr. Flanagan's deposition. I'm going to read from, there's two page ID numbers, I'll read both of them, ID 474 and 253. Question, okay, so you got to the backyard of Jeff's house, and what happened? Answer, he tased me again, sprayed me in the face with mace. Okay, so he tased you. Answer, and he began beating on me. How many times did he tase you? Just once. Just once. Answer, I was already down. Then we go to page ID 475, 254, line 8, I thought I had gotten away, that's why I'm out of the house. Question, out of breath, I'm trying to sit down, he catches up to me again, I get tased, and I get maced, and I get kicked the shit out of, that's all there was to it. Well, let's stipulate that he gets tased, and all that stuff happens, we know everything that happens before he's on the ground, and we get to the point where he's getting punched. I mean, we know all the bad stuff, okay, we got that. So, why, I guess my question for you is, your client testified in his deposition that he was still trying to get off the ground after this very long period of resistance where he tries to grab the officer's gun. He's trying to get off the ground at the time that the officer starts punching him. I think there is that quote, but I also know, as you read further down in 475 and 254, he says, I'm trying to sit down and relax and catch my breath. Yeah, I was laying down in the backyard, for all I remember. He's laying down, but he's trying to get up. So, let's assume he's trying to get up. Let's assume that that's the way we have to take the record here. He testified to that. Well, he also testified he was laying down, too, so I think to the extent of the conflict, they're consistent with each other. To the extent it's inconsistent, I think to this day, Lord is right, it goes to the jury. Let's assume, as I was saying, that he's trying to get up. Why, after all this period of resistance, trying to grab the officer's gun, why can't a reasonable officer punch him at that point to bring this to an end? Because that's not what's alleged in this case. The allegation in the case by Mr. Flanagan is that he was punched closed fist and open fist 15 to 20 times. That's where the reasonableness question comes in. So, it's not that the officer chose to punch him, it's the number of punches? Is that what you're arguing? No, I mean, I think the fact he punches him, given the totality of circumstances, is unreasonable. Explain to me why, that's my question. He's trying to get off the ground after he tried to grab the officer's gun. So, why is it unreasonable for the officer, at this point, to punch him? Set aside the number of times. Because I don't think Mr. Flanagan admitted he tried to reach for the gun. Let's assume that he did. What case would you point to that would make clear to the officer that after this long encounter, and him still trying to get off the ground, that, hey, officer, you cannot punch him at this point? I'm not sure, I mean, what case would you, this is about case law, this analysis, so what case would you point to? I think you would have to, before we can get there, I think you have to look, and Ms. Morrow liked the phrase, the totality of the circumstances, and I think that's important. You're saying you don't have a case. Well, I mean, is there one case, is there one case that says that, not that I'm aware of, but. You need a case in qualified immunity, it's like habeas. You need something that would have made clear to the state actor that they should not do what they did. Well, is it, am I able to find the case that has this exact same facts there? No. I'm not asking for a case, you know, Flanagan versus somebody, I just want to know what is your best case, because that would be helpful to our analysis of what is a, not a, you know, it's a close issue here. Well, I mean, I guess I would disagree, I don't think it is a close issue, especially with the admission of the defendant officer and his deposition. I mean, and this is. What admission? Looking at page ID 531, when you have the series of questions, you know, back and forth, and I'll read it as it's written, question, did you ever strike Mr. Flanagan in the head? Answer, no, sir. Question, ever punch him? Question, answer, no, sir. Question, ever hit him in the face or head? We're assuming he, all those things did in fact happen, because of the posture of this appeal. So, where does he say it would be excessive? Okay. You say there's an. Question 20, and you would agree that there would be no reason to do that in this case? 22, answer, in this case, no, sir. So, specifically, you look at all the questions and then you look at lines 20 to 22, he specifically says there's no reason to do it. Okay, and we've talked about that. But here, I guess, here's the question I have for you. This is not a subjective inquiry. It's an objective test whether a reasonable officer, at the time he starts punching your client, would know from the case law, clearly, that he should not punch your client. It's not what he says, it's what the case law says. And so, what's your legal argument as to why an officer would have known at that time, after all this went on, the one thing you can't do here after tasing him, spraying him, and so on, is punch him? Well, I think if you, I think you do have evidence, and if you go to some of the, and I understand there's a conflict in testimony. That's really something the jury's going to have to deal with. Let me ask, but the conflict's just on your side, right? Well, the conflict, there's the point, and there's points in the record where he says he was laying down when the punches. But there's other points where he says he was getting up, and isn't there case law, you correct me if I'm wrong, isn't there case law in the Sixth Circuit that says if someone testifies inconsistently, we can disregard both for determining this? In other words, if he's testified to two things, I wasn't trying to get up, and I was trying to get up. Don't we throw those out? Do we leave that to a jury where a point, a point one is capable of making a claim, and one isn't? I don't know the, I don't know that case. I know in the cases where there's video, and the video contradicts the testimony of the deponent that you throw that out. I am aware of that case, Scott versus Harrison as prodigy. Do you concede that if he was, back to Judge Kethledge's question, do you concede that if he was trying to get up after this long and, you know, protracted chase, if he's trying to get up and the officer's trying to subdue him, the officer can use force to stop him from getting up, so the officer can handcuff him? The least amount of force possible, yes. But I, I would submit, and a jury would have to deal. What case has a least amount of force, as opposed to reasonable? I don't have the case off the top of my head. But the test is whether it's reasonable, and is it reasonable given the fact that you have an officer? It's not just simply whether sort of, you know, metaphysically we think it's reasonable. The test is whether the law would make clear to the officer that it was unreasonable. And, and I'm, I'm just trying to be candid with you about my concern about your case, your position here, which is that it seems that the record would support the proposition that your client was still trying to get up. And, and I'm concerned that the law did not make clear to the officer, notwithstanding anything he himself said, that the law did not make clear that he could not punch Mr. Flanagan at that point while he was trying to get up. And, you know, you can speak to the law on that or, or you can talk about something else, but that's what I'm concerned about. Well, here's why I think the law was clear at the time, because you have the officer himself testifying that punching him 15 to 20 times would not be reasonable. Where would he get that but from the case law? From his own beliefs. What do you mean? Well, he's, he's testifying that 15... Officers do all sorts of things that are, that are better for society or better for defendants than the case law requires. Well, but he's also testified in this case, he's been trained on use of force, he's been trained in excessive force, and then you have his admission that 15 to 20 punches in the head would be excessive. At what point was he resisting arrest that, that he made a plea of guilty on? Where'd that stop? See, that, and that's the interesting, and I think that's the, you know, when you start to get into the Heck versus Humphrey, so if you look at the plea and what he wrote, the handwritten statement from the Oakland County Circuit Court, it says, quote, I ran away from the police and had marijuana in my possession, end quote. That was... Marijuana wouldn't be the resisting arrest, you'd say just the running away was the resistance? And he failed to obey commands, he said. Well, well, no, the base, the, the, the written plea in the circuit court was, as I quoted, quote, I ran away from the police and had marijuana on my person. That is the complete statement on the plea in the state court that served as the basis for that resisting obstructing plea. And as the district court said, that guilty plea was really based on his failing to obey a lawful command and not some sort of physical resistance. And the district court made that very clear. And I think that's, and I think it's important here too because he's, the basis of that plea in the district, the circuit court was not that I physically resisted, I punched him, he tried to get me, I tried to grab his gun, it wasn't that. The basis of the plea was I ran. I didn't stop when he told me. And that's, the district court, that's what they looked at in the district court and that aspect was right. And you know, again, this is defendant's second bite at the Heck versus Humphrey apple. They filed a 12B6 right out of the box in the case and the judge denied it. The guilty plea did not change over the course of the litigation. The guilty plea that was in the state court was the same all the way through the case. And she again denied the Heck versus Humphrey's argument a second time. And as your honor noticed, this is really no different than what this circuit decided in 2010 in the Schreber case. You know, there, Heck was not intended to be a shield to protect officers from 1983 suits. And the problem here is that the statute is written in Michigan so broad that if we were in Michigan and I walked out of the courthouse today and an officer said, give me your name, and I didn't do that, technically I'm resisting and obstructing and now I'm guilty of a felony. So does that mean the officer can then punch me 15 to 20 times? And then at the end of the day, as an attorney in the State Bar of Michigan, I don't want a felony on my record. So I plead to a misdemeanor. The officers can't use the statute and its breadth as a sword and a shield. And I think it's very important that, you know, even the recent case, the Lucier versus City of Ecorse case, 2015 case, this court looked at a situation where the plaintiff pled guilty to resisting and obstructing there, the same MCL 750.81D. And it says the Heck Doctrine only applies when Section 1983 would necessarily imply the invalidity of a conviction. So for the remainder of the argument, I rely on the briefs and affirm in the respect that it's been presented to the District Court's decision. Very well. We'll hear rebuttal. Okay. Thank you. At pitch. Can I ask you a question? If we find one blow is permitted, why would 15 to 20 be? In other words, at what point does it cross the line, especially where he's saying, I didn't need to do it? When the blows continue after the person is subdued. So why isn't that a factual issue? Because he is saying at some point he was subdued. He says that he... Right. But he also admits that he struggled up until the point that he was subdued. And that's really... That's the whole point. And he actually gave us insight into his reasoning. Flanagan, he testified that he was trying to get up as the blows were being delivered because, quote, who wants to sit there and get socked or sprayed in the face or get smacked around? He acknowledged that he physically resisted pain and up until the moment he was secured in handcuffs. That's at page ID 260 and 258. And they also... It's very clear that no force of any kind was used once he was secured in handcuffs. And so that's why the number of blows, whatever it took to get this guy under control is what it took. And if we take his assertion that it took 15 blows and Mr. Flanagan admits that he resisted the entire time, then I guess it took 15 blows. But we're not supposed to be armchair quarterbacks. That's the whole purpose of qualified immunity. And there is no case law that made this clearly established. He can't provide one because there is none. And the cases that were cited by the district court all involved instances where the person was physically subdued either in the rear of a patrol car or in handcuffs or physically by an officer laying on top of the defendant. We don't have that in this case. There is no allegation of post-subdued violence. So those cases that were cited by the district court in all due respect have absolutely no bearing on this case. And finally, on the heck argument, very briefly, if, as I keep urging, you take a look at this entire transaction from beginning to end, the resisting and obstructing offense is not what defendants said it was for purposes of establishing a plea. Because we know that they can admit just enough to satisfy the elements and that's enough. But when you look at the real facts of the case and you look at the beginning to the end and the entire transaction, this resisting and obstructing conviction is inextricably intertwined with this 1983 excessive force case. So it goes against consistency and finality that are the bedrock principles of heck. Thank you very much.